IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Maurice Dunbar,<br><br>                 Plaintiff,<br><br>v.<br><br>D. Adedokun, *Program Coordinator, SCDC*; N. Frierson, *Oversight Coordinator, SCDC*; Ms. Washington, *Director ATU, Lee Correctional Institution*; and Ms. Hilton, *Classification, Lee County Correctional Institution*,<br><br>                 Defendants. | Civil Action No.2:12-cv-351-MGL-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The Plaintiff, proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment. (Dkt. No. 45.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about February 2, 2012, listing the following as Defendants: Adedokun, Frierson, Washington, and "SCDC State Class." (See Dkt. No. 1.) On or about April 25, 2012, Plaintiff filed an Amended Complaint, wherein he added Ms. Hilton as a Defendant. (Dkt. No. 20.) On May 21, 2012, the Honorable Joseph Anderson dismissed Defendant "SCDC State Class." (Dkt. No. 29.) On July 27, 2012, Defendants filed a Motion for Summary Judgment. (Dkt. No. 45.) By order filed July 30, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to

the motion. (Dkt. No. 46.) Plaintiff filed a Response in Opposition to Defendants' motion. (Dkt. No. 49.)

## PROCEDURAL FACTS

Plaintiff is currently incarcerated at Allendale Correctional Institution serving a four-year sentence on a drug charge. Plaintiff alleges that on July 26, 2012,[1] he was transported from Manning Correctional Institution, where he "was working on the work-release labor crew, with a custody level of (MO1B)," to Lee Correctional Institution ("Lee"), which is a Level 3 yard. (Dkt. No. 1 at 3 of 5.) According to Plaintiff, he was forced to participate in a program that is "voluntary unless ordered by a judge," and no such order applied to Plaintiff. (Id.) Plaintiff alleges that when he refused to participate in this voluntary program, he was threatened with disciplinary charges. (Id.) Plaintiff states that when he informed Defendants that his custody level was too "low to stay on [the Level 3] yard," Defendants "then took the initiative to change [his] status of work-release to a higher custody level to detain [Plaintiff] on [the] yard against [his] will." (Id.) Plaintiff further complains that when inmates participate in this program, the inmates are locked out of their cells, and "if they have to urinate, or defecate . . . [they are told] to use the shower, . . . which is cruel and unusual punishment." (Id. at 4 of 5.) In the "Relief" section of his Complaint, Plaintiff asks for an award of $50,000 against each Defendant. (Id. at 5 of 5.)

As noted above, Plaintiff filed an Amended Complaint. (Dkt. No. 20.) In the Amended Complaint, Plaintiff added Ms. Hilton as a Defendant. (Id.) Plaintiff complains that Ms. Hilton erroneously changed his custody level so that he could remain at Lee for the program. (Id. at 3 of 3.)

---

[1] The date July 26, 2012, is obviously incorrect, as Plaintiff filed the instant Complaint in February of 2012. It is possible that the correct date is January 26, 2012, but the exact date is immaterial for purposes of this Report and Recommendation. (See Washington Aff. ¶ 10; see also Dkt. No. 1 at 5 of 5.)

2

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants seek summary judgment in the case *sub judice*. (Dkt. No. 54.) Defendants attached the Affidavit of Tonia Washington and the Affidavit of Rosa Hilton to their motion. (See Dkt. No. 45-2; Dkt. No. 45-3.) Tonia Washington states in her Affidavit that she is an employee of the South Carolina Department of Corrections ("SCDC") and serves as the Program Director of the Addiction Treatment Unit ("ATU") at Lee. (Washington Aff. ¶¶ 1-2.) Ms. Washington further states,

> All inmates in the South Carolina Department of Corrections are assessed and if they meet certain criteria are referred to the Addiction Treatment Unit. This is a **mandatory program** dealing with addiction treatment and is usually completed just prior to anticipated release. It serves as a transition program for successful re-integration into society.

(Id. ¶ 3 (emphasis added).) Ms. Washington explained that because not every institution has an ATU, "inmates are transferred to facilities which have this unit when room becomes available," and that "[o]ftentimes it is necessary to change their security level so that they may be housed at this unit for the duration of the program, which normally lasts six months." (Id. ¶ 5.)

According to Ms. Washington, Plaintiff was evaluated twice during his time in SCDC and was referred to the ATU program. (Id. ¶ 4.) Ms. Washington further stated,

> 7. Each inmate is informed that this is a mandatory program and that refusal to participate can result in a major disciplinary charge.
>
> 8. Inmate Dunbar was aware this is a mandatory program. He adamantly refused to participate and was given a major disciplinary charge which resulted in the change of his classification and the level of facility in which he could be housed. He was moved from Lee Correctional Institution, to open up a spot in the program for another inmate, and transferred to Allendale Correctional Institution.

(Id. ¶¶ 7-8.) Ms. Washington stated that Plaintiff entered the ATU program on January 26, 2012, but when he "refused to sign any intake paperwork and refused to have a biophysical assessment completed," she charged him with refusing to attend a compulsory program on February 15, 2012. (Id. ¶ 10.) "A hearing was held on March 7, 2012, wherein [Plaintiff] was found guilty of the offense by hearing officer[] Sharon Patterson." (Id. ¶ 11.)

Rosa Hilton, a classification caseworker at Lee, also submitted an Affidavit. (See Dkt. No. 45-3.) She explains that Plaintiff was transferred to Lee so that he could participate in the ATU program, and that "[h]is classification would have been adjusted upon arrival to Lee so that he could participate in the treatment program." (Hilton Aff. ¶ 3.) According to Ms. Hilton, "[o]ftentimes a prisoner's classification is changed so that they may take part in the treatment program at the units where it is available." (Id.) She reiterates that "[u]pon [Plaintiff's] refusal to participate in the treatment program, which is a major disciplinary

4

charge, he was reclassified and transferred to Allendale Correctional Institution." (Id. ¶ 4.) She also states, "[P]laintiff's classification would have been evaluated according to the same criteria used for all inmates in the South Carolina Department of Corrections." (Id. ¶ 6.)

The undersigned recommends granting Defendants' Motion for Summary Judgment. (Dkt. No. 45.) To the extent Plaintiff complains that participants of the ATU program must urinate and/or defecate in the shower, it is undisputed that Plaintiff never participated in the program. Because Plaintiff is a prisoner, he is prohibited from bringing civil actions on behalf of other prisoners. See Oxendine v. Williams, 509 F.2d 1405, 1407 & n.* (4th Cir. 1975); see also Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981); Myers v. Loudoun Co. Pub. Sch., 418 F.3d 395, 400-01 (4th Cir. 2005). As Plaintiff himself has not been exposed to these alleged conditions, Defendants are entitled to summary judgment on this claim.

Plaintiff's claims related to his classification level also fail. Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983) (no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate simply does not have a constitutional right to be confined in a particular location. Olim v. Wakinekona, 461 U.S. 238 (1983). In Sandin v. Connor, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification, as there is no evidence that Plaintiff's confinement presents the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. See Sandin, 515 U.S. at 483-85; Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir. 1997)

(confinement in administrative segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force, and inmates did not possess a liberty interest in avoiding administrative segregation); see also Brown v. Evatt, 322 S.C. 189, 470 S.E.2d 848 (1996) (holding under South Carolina law, that the state statutes and regulations regarding classification of prisoners create no liberty interest in a security or custody classification).

In his Response in Opposition, Plaintiff complains that Defendants did not follow SCDC policies in requiring him to participate in the program. (See Dkt. No. 49 at 2-3 of 9.) Plaintiff asserts that he did not meet the standards for participation. (Id. at 2.) Of course, the fact that Defendants allegedly did not follow SCDC policy does not, in itself, amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Because no reasonable jury could find return a verdict in Plaintiff's favor, the undersigned recommends granting Defendants' Motion for Summary Judgment.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 45) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

November 28, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).